697 So.2d 27 (1997)
Amber BARRINO
v.
EAST BATON ROUGE PARISH SCHOOL BOARD, et al.
No. 96 CA 1824.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*28 Sybil LeDuff Fullard, Paulette P. Labostrie, Baton Rouge, for plaintiff/appellant, Amber Barrino.
L. Lane Roy, Lafayette, for defendants/appellees, East Baton Rouge Parish School Board, et al.
*29 Before WHIPPLE and FITZSIMMONS, JJ., and TYSON, J. Pro Tem.[1]
WHIPPLE, Judge.
This appeal arises out of the trial court's grant of summary judgment in favor of defendants, East Baton Rouge Parish School Board, Shelton Watts, Richard Morgan and Cindy Harmon, in a tort suit filed by Amber Barrino ("Barrino").

FACTUAL AND PROCEDURAL HISTORY
The following facts are undisputed. The school year at Belaire High School was divided into six six-week periods, with the fourth through sixth six-week periods comprising the spring semester. Students received progress reports at the end of each six-week period. Additionally, the grades a student received on assignments and tests given during the fourth through sixth six-week periods were cumulated into a final grade for the spring semester.
In the spring of 1993, Barrino was a senior at Belaire High School. As a result of personal medical problems, Barrino missed 38 classes in her American History course and 28 classes in her Algebra II course during the spring semester.[2]
Prior to May 1993, Barrino received progress reports after both the fourth and fifth six-week periods, indicating she was failing both history and algebra. On May 6, 1993, Barrino and her mother met with Richard Morgan ("Morgan"), her history teacher, regarding the makeup of missed assignments and tests. However, Barrino had not missed any tests or assignments during the sixth six-week period. Thus, the meeting pertained to the makeup of tests and assignments administered during the fourth and fifth six-week periods. Because the makeup work was overdue and the final exam in history was scheduled for the next day, Morgan refused to allow Barrino to makeup the missed work.[3] After the final exam, Morgan gave Barrino a handwritten note setting forth how Barrino's final grade was calculated. It concluded with a statement of the number of points Barrino would have "needed" to earn a passing grade. Nothing in this note indicates that Barrino's grade was not final or that she could still turn in work in an effort to diminish the 191 point deficit. In a subsequent meeting with Barrino's mother and other school officials held on May 13, 1993, Morgan refused a tender by Barrino's mother of makeup work prepared by Barrino, allegedly in response to the note stating she "needed" 191 points to pass history.
Also, at some point during the semester, Barrino was told by Cindy Harmon ("Harmon"), her algebra teacher, that Harmon "had never failed a senior, and did not plan to do so now." Barrino believed that this statement was an assurance that she had passed algebra; and accordingly, Barrino contends she was shocked to learn from Shelton Watts ("Watts"), the principal of Belaire, on May 28, 1993, that she would not be graduating with her classmates because she had failed both history and algebra. However, in her deposition, Barrino admitted that Harmon had never expressly assured Barrino that she would pass algebra, and that she had an "F" in the class before she completed *30 a substantial project in the sixth six-week period.
As a result of this conduct of defendants, Barrino contends that she suffered severe emotional distress.[4]
Barrino filed suit against defendants on May 31, 1994, alleging that they intentionally, and in the alternative, negligently, inflicted emotional distress upon her. After conducting discovery, defendants moved for summary judgment relying upon the affidavits of both Harmon and Morgan, the Pupil Progression Plan for the East Baton Rouge Parish School System, the East Baton Rouge Parish School Board Policy Manual, the Student Rights and Responsibilities Handbook and the Discipline Policy for 1993-1995, correspondence between Shelton Watts and the supervisor of Child Welfare and Attendance and excerpts from Barrino's deposition. Barrino opposed the motion contending that defendants' attitude toward Barrino breached a duty owed to Barrino to teach her and accomplish the purpose of education. Particularly, she contended that whether the defendants' conduct constituted an intentional or negligent infliction of emotional distress upon Barrino was not properly resolved on summary judgment. Barrino did not submit any evidence with her opposition. After a hearing, the trial court granted summary judgment in favor of defendants and dismissed Barrino's suit with prejudice.
This appeal followed in which Barrino asserts two assignments of error. First, Barrino contends the trial court erred in granting the summary judgment because intent was at issue. Second, Barrino contends the trial court erred in failing to consider all the appropriate remedies applicable to this case, i.e., the trial court did not address Barrino's alternate claim of negligent infliction of emotional distress.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); McKey v. General Motors Corporation, 96-0755, p. 3 (La.App. 1st Cir. 2/14/97); 691 So.2d 164, 167.
Louisiana Code of Civil Procedure article 966(B) provides that a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Prior to 1996 La. Acts, First Extraordinary Session, No. 9, which amended LSA-C.C.P. art. 966, summary judgments were not favored, and all doubt concerning a dispute as to a material issue of fact was resolved against granting the motion for summary judgment and in favor of a trial on the merits. However, LSA-C.C.P. art. 966(A)(2), as amended, now provides in part, "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except *31 those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." As this legislation is procedural in nature, it must be applied retroactively, as well as prospectively. McKey, 96-0755 at p. 3; 691 So.2d at 167; NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555, p. 3 (La.App. 2nd Cir. 8/21/96); 679 So.2d 477, 479; Short v. Giffin, 96-0361, pp. 5-6 (La.App. 4th Cir. 8/21/96); 682 So.2d 249, 253, writ denied, 96-3063 (La.3/7/97); 689 So.2d 1372. See also LSA-C.C. art. 6. Nevertheless, the amendments to LSA-C.C.P. art. 966 do not effect a change in the burden of proof, as specified in Paragraph (G): "Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover." McKey, 96-0755 at pp. 3-4; 691 So.2d at 167. Therefore, prior jurisprudence on the issue of a mover's burden of proof on a motion for summary judgment is still controlling. McKey, 96-0755 at p. 4; 691 So.2d at 167. This burden, and the court's role in determining whether the burden has been met, have been expressed as follows:
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. The initial determination, on motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment shall be denied. To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact.... Since the moving party bears the burden of proving the lack of a material issue of fact, where the court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. It is only if the court determines that the moving party has met this onerous burden that the burden of proof shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings.
The court should not seek to determine whether it is likely that the mover will prevail on the merits, but rather whether there is an issue of material fact. A fact is material if essential to plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not recover. Consequently, we must look to the applicable substantive law to determine whether a particular fact in dispute is material.
McKey, 96-0755 at pp. 4-5; 691 So.2d at 167-168 (citations omitted).

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
In her petition, Barrino asserts that through their actions, defendants intentionally inflicted emotional distress upon her. In Louisiana, a cause of action for intentional infliction of emotional distress is viable. White v. Monsanto, 585 So.2d 1205 (La. 1991). To recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. White, 585 So.2d at 1209.
Regarding whether conduct is extreme and outrageous, the Louisiana Supreme Court has stated:
The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community....
The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent *32 authority over the other, or power to affect his interests....
... Liability does not attach where the actor has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress.
White, 585 So.2d at 1209-1210 (citations omitted).
As to the intent element, liability can only arise where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like. White, 585 So.2d at 1210.
Barrino argues that summary judgment was not proper because the intent of the various defendants was at issue. However, we note that the jurisprudence of this state has clearly held that summary judgment is a proper procedural method to consider an employee's allegation that his injury resulted from an intentional act of his employer. Carey v. UMC (United Mechanical Contractors), 553 So.2d 472 (La.1989); Landry v. Uniroyal Chemical Company, Inc., 94-1274, p. 7 (La.App. 1st Cir. 3/3/95); 653 So.2d 1199, 1202, writ denied, 95-1381 (La.9/15/95); 660 So.2d 461; King v. Schuylkill Metals Corporation, 581 So.2d 300, 302 (La.App. 1st Cir.), writ denied, 584 So.2d 1163 (La.1991). Thus, we see no reason why it should not also be a proper procedural method to consider a plaintiff's allegation that a defendant is liable for the intentional infliction of emotional distress, especially in light of the additional burden such a plaintiff has of showing that the conduct was extreme and outrageous.
According to Barrino's petition, defendants' conduct consisted of the following: Morgan's refusal to accept makeup work submitted on behalf of Barrino on May 13, 1993, and his refusal to enter her excuses for absences on the roll; Harmon's "assurance" that Barrino had passed algebra; and Watts' refusal to acknowledge the Child and Welfare and Attendance supervisor's determination that "extenuating circumstances" existed for Barrino, and his notice to her on May 28, 1993, that she would not be graduating.[5] Additionally, she states as a conclusion in her petition that 1) this "outrageous conduct" caused her to suffer psychological and emotional distress; 2) that defendants knew with virtual certainty that a young child suffering from personal tragedies and physical sickness would break under the mental pressure of the unnecessary tug of war with defendants; and 3) the resulting psychological and emotional distress was "actively desired and/or realized with a virtual certainty that such harm would occur."
We find that there are no material facts in dispute with respect to the conduct about which Barrino complains. Even assuming the truth of the factual allegations by Barrino regarding defendants' conduct, such conduct clearly did not constitute the extreme and outrageous conduct necessary to prove entitlement to damages for the intentional infliction of emotional distress. Thus, as a matter of law, these factual allegations do not support Barrino's conclusion that the defendants' conduct under the attendant circumstances was outrageous.
The affidavits of both Morgan and Harmon set forth the grading procedure and state that Barrino was required to perform the same tasks and was graded on the same scale as the other students, and that plaintiff had received progress reports after both the fourth and fifth six-week periods, indicating she was failing history and algebra. Morgan further stated that plaintiff attempted to submit overdue makeup work on May 6, the day before the final exam, which delinquent effort was not considered reasonable by him. Additionally, Barrino testified in her deposition that she knew she was failing both of these courses before the final portion of the semester. There was nothing in the record to *33 show any attempts made by Barrino to turn in makeup work prior to May 6, nor was there any evidence in the record to demonstrate Barrino was physically unable to perform makeup work before May 6. Accordingly, we cannot say that Morgan's or Harmon's conduct in assigning failing grades to Barrino and declining to accept makeup work in May was extreme and outrageous under these circumstances.
As to Harmon's alleged statement that she "had never failed a senior and did not plan to do so now," Barrino acknowledged in her deposition that Harmon never told Barrino that she would pass. Instead, Barrino admitted she simply assumed or believed that she would pass based on the statement made by Harmon. Consequently, we are unable to say that Harmon's statement constituted extreme and outrageous conduct, especially in light of the admissions by Barrino in her deposition that Harmon said nothing else which would cause plaintiff or anyone else to believe plaintiff would pass.
Regarding Watts' action in not allowing Barrino to graduate and in not informing her of this fact until May 28, it is clear from the record that Barrino was not allowed to graduate because she failed history and algebra. Moreover, Barrino was admittedly aware that she was failing these courses before the final portion of the semester. Thus, Barrino was not reasonable in believing she would graduate. Consequently, Watts' conduct was not extreme and outrageous.
In sum, the actions by these defendants about which Barrino complains do not amount to extreme and outrageous conduct under White v. Monsanto. Additionally, we note that in opposition to the motion for summary judgment, Barrino did not come forward with any evidence to demonstrate that through these actions, defendants actively desired and/or realized with a virtual certainty that emotional distress would occur. Thus, nothing contradicted Morgan's and Harmon's respective statements that they treated Barrino the same as other students in their classes regarding the course requirements and grading scale. Barrino's conclusory allegation that defendants knew she would suffer emotional distress by these actions is not sufficient to defeat summary judgment under the undisputed facts of this case. Accordingly, summary judgment was properly granted to reject Barrino's intentional infliction of emotional distress claim as a matter of law.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
Barrino further contends that the trial court erred by failing "to consider all remedies under which [she] might be entitled to recovery," and that the trial court "did not even consider, under the appropriate duty-risk analysis whether [Barrino] might have been entitled to recovery" for the negligent infliction of emotional distress. We likewise find no merit to this claim, as we conclude the trial court also properly rejected Barrino's claim on this basis. It is well established in our jurisprudence that a claim for negligent infliction of emotional distress unaccompanied by physical injury is viable. Bordelon v. St. Frances Cabrini Hospital, 93-1331, p. 2 (La.App. 3rd Cir. 5/4/94); 640 So.2d 476, 478 (citing Clomon v. Monroe City School Board, 572 So.2d 571 (La.1990); Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990); and Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988)). Any recovery for mental anguish tort damages must be based on LSA-C.C. art. 2315, which provides in pertinent part as follows:
Every act of man that causes damage to another obliges him by whose fault it happened to repair it.
The duty-risk analysis is used to assist our courts in determining whether one may recover under LSA-C.C. art. 2315. Bordelon, 93-1331 at p. 3; 640 So.2d at 478 (citing Entrevia v. Hood, 427 So.2d 1146 (La.1983)). For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard *34 conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Mathieu v. Imperial Toy Corporation, 94-0952, pp. 4-5 (La.11/30/94); 646 So.2d 318, 322. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu, 94-0952 at p. 11; 646 So.2d at 326. However, this recovery has been limited to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990). Whether Barrino's claim is one such limited case need not be decided because we find that she cannot, as a matter of law, meet all of the inquiries of the duty-risk analysis.
The undisputed facts of this case establish that defendants owed a duty to Barrino to allow her to makeup missed tests and assignments.[6] However, pursuant to Section II(B)(3) of the Student Rights and Responsibilities Handbook, the student had the obligation of requesting the makeup work. (Emphasis added.) Inherent in this policy is that this obligation should be timely exercised.
Based on the affidavits and other evidence in the record, Barrino's first request or attempt to submit makeup work was made in May. These affidavits also established that Barrino did not miss any tests or assignments in the last six-week period. Accordingly, it is clear from the record that any makeup work Barrino attempted to submit in May was for work missed during the earlier months of the fourth and fifth six-week periods. In opposition, Barrino failed to submit any evidence to show either that she requested or attempted to submit makeup work prior to May, or that she was physically unable to makeup missed assignments and tests prior to May. Additionally, Barrino did not submit any evidence to establish the point value or content of the rejected makeup work that she submitted in May. We cannot say the teachers were unreasonable in refusing to accept makeup work submitted by Barrino for the first time in May, for assignments and tests missed during the months of January through April. Thus, defendants did not breach any duty owed to Barrino to allow her to makeup missed assignments and tests. Consequently, summary judgment is proper as to Barrino's negligent infliction of emotional distress claim.

CONCLUSION
For the reasons expressed in this opinion, we find that summary judgment in favor of defendants was appropriate. Under the undisputed facts of this case, defendants' conduct did not rise to the level of extreme and outrageous conduct needed to constitute intentional infliction of emotional distress. Additionally, we can not say that defendants breached any duty owed to Barrino which would render them liable for negligent infliction of emotional distress. Instead, the record shows only the neglect by Barrino to take any reasonable or timely measures to correct the academic deficiencies which led to her failing grades in the two courses at issue. Accordingly, the judgment of the trial court is affirmed. Although Barrino filed this petition and prosecuted this appeal in forma pauperis, costs may nevertheless be taxed against her. LSA-C.C.P. art. 5188; State in Interest of EG, 95-0018, pp. 6-7 (La.App. 1st Cir. 6/23/95); 657 So.2d 1094, 1098, writ denied, 95-1865 (La.9/1/95); 658 So.2d 1263; Gibson v. Barnes, 597 So.2d 176, 178 (La. App. 1st Cir.1992). Accordingly, all costs of this appeal are assessed against plaintiff-appellant, Amber Barrino.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur. Taking the allegations of material fact (as amended by Amber's deposition) as true, plaintiff failed to establish the elements of intentional or negligent infliction of emotional distress. See La. *35 C.C.P. art. 966 B & C. Amber admitted in deposition that she had heard around school that Mrs. Harmon never failed seniors, and that Mrs. Harmon had not said that Amber would pass. Mr. Morgan refused to take make-up work presented either just prior to the final examination or after it. Mr. Morgan had no duty to accept work tended at such a time. Thus, the defendant was entitled to judgment as a matter of law.
As to the changes in the procedure on motion for summary judgment, I believe that the amendment to Code of Civil Procedure article 966 leveled the playing ground. Jenson v. First Guaranty Bank, 96 CA 0381-82, p. 3-4 (La.App. 1st Cir. 5/9/97); ___ So.2d ___ [1997 WL 236283]. The supporting documents submitted by both parties should be scrutinized with the same care.
NOTES
[1] Judge Ralph E. Tyson is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record reveals that Barrino did not enroll in American History until ten class periods after the semester began. Of the remaining 70 classes, she missed 28.
[3] According to a letter written by Barrino's mother to the supervisor of Child Welfare and Attendance, which was attached as an exhibit to Barrino's petition, the final exam took place on the day after the May 13 meeting. However, the date of the final examination is not a factual issue material to Barrino's theories of recovery.

Additionally, according to Barrino's petition, another reason stated by Morgan for his refusal to accept the makeup work was that Barrino's absences were unexcused. It was subsequently determined that the absences were excused. Regardless of the excused or unexcused nature of the absences, Morgan stated he believed that it was unreasonable for Barrino to expect to be able to perform makeup work on the day before the final exam for assignments and tests administered several months earlier, during the fourth and fifth six-week periods. There was no evidence in the record to dispute the fact that Barrino did not request or attempt to makeup any work prior to May 6, 1993.
[4] Barrino also complained about Watts' conduct in not accepting a finding by the supervisor of Child Welfare and Attendance that "extenuating circumstances" existed for Barrino. This "conduct" arose in the following manner: Pursuant to Section II of the East Baton Rouge School Board Policy Manual, to be eligible to receive grades, a student must attend at least 80 days a semester. The only exception to the attendance regulation is the declaration of "extenuating circumstances," verified by the supervisor of Child Welfare and Attendance. However, the declaration of "extenuating circumstances" simply means a student is eligible to receive grades. The student shall not receive those grades if the student is unable to complete makeup work or pass the course. Because of the number of her absences and defendants' refusal to allow Barrino to makeup missed tests and assignments, Barrino requested a declaration from the supervisor of Child Welfare and Attendance that "extenuating circumstances" existed. The supervisor sent a letter to Watts declaring the existence of "extenuating circumstances" as to Barrino. Watts disputed the authority of the supervisor to declare the existence of "extenuating circumstances." We find that this dispute likewise is not material to Barrino's claims because regardless of the existence of "extenuating circumstances," Barrino failed to earn passing grades in history and algebra because of her failure to timely complete or makeup missed tests and assignments.
[5] As we have previously concluded that the excused nature of Barrino's absences and the existence of "extenuating circumstances" are not material, we will not address whether the conduct of Morgan in not entering excuses for Barrino on the roll and the conduct of Watts in not acknowledging the determination of "extenuating circumstances" was extreme and outrageous.
[6] Pursuant to Section II of the Student Rights and Responsibilities Handbook, students with excused absences were allowed to makeup school work that was missed.