CARTER, C.J.
|2This case involves a res nova issue in Louisiana: whether the victim of a crime is entitled to an award of damages for the *192 negligent infliction of emotional distress due to the wrongful disposal of evidence collected during an ongoing criminal investigation. The trial court awarded the plaintiff $50,000.00 for the emotional distress and mental anguish she suffered as a result of the defendant’s breach of duty to preserve the criminal evidence. For the following reasons, we reverse.
FACTS
It is undisputed that twenty years ago, on January 31, 1989, the plaintiff, Lisa Dennis, was raped at knifepoint by an unknown assailant in her Donaldsonville, Louisiana home. The Ascension Parish Sheriffs Office (Sheriffs Office) investigated the aggravated rape.[1] As part of the investigation, the plaintiff was taken to the Provost Memorial Hospital where a rape kit was conducted. Additionally, the plaintiffs clothing was collected, her home was processed for evidence, and she provided a physical description for a composite sketch of her attacker. Unfortunately, the rapist was never identified, arrested, or prosecuted, and the plaintiffs case remains open and unresolved to this date.
Fourteen years after the attack, in May 2003, the plaintiff was watching media coverage of the Baton Rouge area serial rapist and killer, Derrick Todd Lee. Convinced that the serial killer was her attacker, the plaintiff contacted the Sheriffs Office to identify him as the possible rapist. The plaintiff requested that the Sheriffs Office examine the evidence collected during the investigation of her |,fi989 rape to determine if the serial killer was her assailant. The same detective who had investigated the initial crime handled the ongoing investigation.
During a search for the evidence, the Sheriffs Office quickly ascertained that the plaintiffs rape kit, as well as all of the other physical evidence connected with the initial investigation, had been destroyed pursuant to a court order in 1995. The court ordered the disposal of the evidence following the Sheriffs Office request that the District Attorney for Ascension Parish file a motion to dispose of the evidence. It is undisputed that the District Attorney’s motion to dispose of the evidence in 1995 was based on the fact that the evidence had been mislabeled by the Sheriffs Office as evidence of a crime that could no longer be prosecuted and was therefore considered abandoned/forfeited contraband held in connection with a criminal investigation.
On June 9, 2003, the Sheriffs Office conducted a meeting with the plaintiff to inform her that the evidence had been mislabeled as a simple rape case instead of an aggravated rape case. The Sheriffs Office explained that evidence for a simple rape case could legally be disposed of after a statutorily-mandated period of time because the offender could no longer be prosecuted for the crime and that there was no statute of limitation for the destruction of evidence in an aggravated rape ease. The Sheriffs Office also informed the plaintiff that the physical description of her rapist did not match the physical description of the serial killer (based on the serial killer task force timeline); thus, there was no positive lead or identification linking the serial killer to the plaintiffs rape. Additionally, the Sheriffs Office told the plaintiff that her case would continue to be an ongoing and open criminal investigation even without the evidence.
On June 7, 2004, the plaintiff filed suit against the Sheriffs Office for the negli *193 gent infliction of mental anguish and emotional distress as a result of the | ^Sheriff s Office incorrectly disposing all of the evidence connected with her 1989 aggravated rape. The plaintiff made no allegations of intentional destruction of the criminal evidence. Instead, she alleged that the actions of the Sheriffs Office were reckless, wanton, and grossly negligent. The plaintiff maintained that when she learned the evidence had been mistakenly destroyed, she re-lived the emotional terror, trauma, and severe distress that accompanied the initial attack, and that her life was drastically altered just as it had been immediately after the attack. The plaintiff also alleged that she was extremely fearful, and she felt vulnerable, humiliated, and re-victimized. The plaintiff testified that although she realized that the Sheriffs Office did not intentionally set out to harm her by destroying the evidence, she would never have closure or peace of mind because her attacker is not behind bars and there is no longer any evidence that can be used to prosecute the rapist in the future, or for use in any available legal remedy she may have against her assailant if he should ever be identified. The plaintiff acknowledged, however, that she may be able to identify the rapist based on her eyewitness recollection.
After a bench trial on June 18, 2008, the trial court ruled that the Sheriffs Office had liability for negligent infliction of emotional distress, finding that the Sheriffs Office had breached its duty to retain and preserve the evidence of the plaintiffs aggravated rape, and that the breach had caused the plaintiffs damages. The trial court issued lengthy reasons for judgment, outlining the law on the duty-risk analysis and examining the jurisprudence on emotional distress and mental anguish damage awards. The trial court concluded that the plaintiff was entitled to $50,000.00 from the Sheriffs Office. The Sheriffs Office appealed, arguing that it has no liability under these facts, and alternatively, that the damage award was excessive.
IsLAW AND ANALYSIS
Initially, we note that the Sheriffs Office pled the affirmative defense of discretionary function immunity under LSA-R.S. 9:2798.1 based upon the exercise or performance of its policy-making or discretionary acts within the course and scope of its lawful powers and duties. But the issue of statutory immunity was not addressed by the trial court in its lengthy written reasons for judgment, nor was this issue raised by the Sheriffs Office in its appellate brief. However, an appellate court may notice ex proprio motu that the law does not extend a remedy against a particular defendant. LSA-C.C.P. art. 927 B; See Capital City Towing & Recovery, Inc. v. City of Baton Rouge, 97-0098 (La.App. 1 Cir. 2/20/98), 709 So.2d 248, 251. And we must first determine whether the discretionary function immunity of LSA-R.S. 9:2798.1 applies so that the Sheriffs Office can be exposed to liability in this case. Gregor v. Argenot Great Cent. Ins. Co., 02-1138 (La.5/20/03), 851 So.2d 959, 963.
Under these factual allegations, it is apparent that the mislabeled evidence that led to the Sheriffs Office’s decision to dispose of the evidence in the plaintiffs criminal case is not the kind of discretionary choice or action that is based on public policy. The Sheriffs Office admits that a mistake was made after the collection of the evidence and that the evidence was mislabeled as pertaining to an investigation of a simple rape instead of an aggravated rape case. This mistake was not the result of a decision based on social, economic, or political policy, nor was it a discretionary act within the Sheriffs Office lawful duties. When the government acts *194 negligently for reasons unrelated to public policy considerations, it is liable to those it causes injury. See Gregor, 851 So.2d at 968. Therefore, the Sheriffs Office cannot rely on statutory immunity to shield itself from potential negligence liability in this situation.
|fiA claim for negligent infliction of genuine and serious emotional distress is a viable claim in Louisiana. See Moresi v. State Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990); see also Barrino v. East Baton Rouge Parish School Bd., 96-1824 (La.App. 1 Cir. 6/20/97), 697 So.2d 27, 33. Recovery for mental anguish or emotional distress is based on LSA-C.C. art. 2315, which provides in part: “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Courts use the duty-risk analysis to determine recovery under article 2315. Barrino, 697 So.2d at 33. For liability to attach under the duty-risk analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm or damages, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, 613. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Barrino, 697 So.2d at 33-34.
In this case, the Sheriff’s Office readily admits that a mistake was made in the processing of the evidence obtained during the investigation of the plaintiffs rape resulting in the mislabeled evidence. The mislabeling mistake led to the court-approved destruction of the evidence after the statutorily-mandated time period for retention of criminal evidence had passed.[2] The Sheriffs Office vehemently denies, however, that it owes any special duty to preserve evidence 17obtained during the investigation of a particular crime for the benefit of the victim of the crime. We find merit to this argument. Our research has not revealed any statutory or jurisprudential basis for the imposition of such a duty to be extended to crime victims. Whether a duty is owed is clearly a question of law. Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 292 (La.1993). The inquiry is whether the plaintiff has any law — statutory, jurisprudential, or arising from general principles of fault — to support her claim. Hardy, 744 So.2d at 614. It is the judiciary’s role to determine whether there is any rule of law or policy reason why a duty would be owed to the plaintiff to compensate her for her damages. Id.
The Sheriffs Office is charged with a general duty to preserve peace and apprehend criminal offenders. LSA-R.S. 33:1435. Nothing in that general duty is designed to protect the individual victim of a crime from emotional distress or mental anguish that may result from the knowledge that evidence of the crime has been *195 negligently misplaced or mistakenly destroyed. Likewise, nothing in that general duty is designed to benefit an individual victim of a crime so that the victim may someday pursue a civil suit or some other legal remedy. Obviously, the proper preservation of criminal evidence is necessary for the successful apprehension and prosecution of criminals. However, it is apparent that the duty to preserve evidence obtained in a criminal investigation is directed toward the general public to aid in maintaining public order, as well as for the benefit of the District Attorney so that criminal suspects can be more readily apprehended and successfully prosecuted.
It is important to note that the Sheriffs Office has absolutely no authority to prosecute criminal cases. Also, the Sheriffs Office cannot dispose of evidence for a criminal case without a court order. See LSA-R.S. 15:41 and LSA-C.Cr.P. art. 167. The District Attorney is given independent charge of every criminal | ^prosecution in his district, and the District Attorney determines whom, when, and how he should prosecute.[3] LSA-C.Cr.P. art. 61. Therefore, the preservation of evidence collected during a criminal investigation by the Sheriffs Office, or any other law enforcement agency, is only one of many considerations utilized in the District Attorney’s determination of whether to prosecute. Clearly, the District Attorney’s power to prosecute is independent from the actions of the Sheriffs Office or the needs and wishes of the victim of a crime.
Further, this case does not present the typical negligent spoliation of evidence daim or the negligent impairment of a civil action claim, where the destruction or loss of evidence involves evidence that would have benefited a plaintiffs potential or pending civil claim. See Robertson v. Frank’s Super Value Foods, Inc., 08-592 (La.App. 5 Cir. 1/13/09), 7 So.3d 669, 672-673. Those causes of action are premised on the right of a plaintiff to be free from interference in pursuing and/or proving his or her civil lawsuit. Id., 7 So.3d at 674. The case sub judice is distinguishable because it centers on the plaintiffs right to have evidence available for the District Attorney’s prosecution of the criminal offender in the future. But in either scenario, the evidence has been negligently destroyed.
Arguably, the obligation or duty to preserve evidence arises from the foreseeability of the need for the evidence in the future. Id., 7 So.3d at 675, n. 3. Thus, the same pertinent question raised in negligent spoliation cases is helpful in this situation: “[d]id the defendant have a duty to preserve the evidence for the plaintiff, whether arising from a statute, a contract, a special relationship between |9the parties, or an affirmative agreement or undertaking to preserve the evidence?” Longwell v. Jefferson Parish Hosp. Service Dist. No. 1, 07-259 (La.App. 5 Cir. 10/16/07), 970 So.2d 1100, 1104-1105, writ denied, 07-2223 (La.1/25/08), 973 So.2d 756 (emphasis added). If so, then the plaintiff has a claim for the defendant’s breach of this duty. If not, the plaintiff has no remedy. Id., 970 So.2d at 1105. Because there is no statutory or jurisprudential duty to pre *196 serve the evidence in a criminal investigation for the personal benefit of the victim of a crime, and the record is devoid of evidence of any special relationship or affirmative agreement or undertaking by the Sheriffs Office to preserve the evidence for the plaintiffs emotional well-being, personal sense of security, or possible civil remedy, the plaintiffs action for negligent infliction of emotional distress fails.
Further, determining the scope of a duty is “ultimately a question of policy as to whether the particular risk falls within the scope of the duty.” Roberts v. Benoit, 605 So.2d 1032, 1044 (La.1991). Seldom does a rule protect every victim against every risk merely because it is shown that the violation of the rule played a part in producing the injury. Id. There must be an “ease of association” between the rule of conduct, the risk of injury, and the loss sought to be recovered. See Hill v. Lundin & Associates, Inc., 260 La. 542, 549, 256 So.2d 620, 622 (La.1972).
Additionally, even if we found that the Sheriffs Office owed a personal duty to the plaintiff in this case, which we decline to do, we seriously question the cause-in-fact of the plaintiffs damages. A plaintiffs case must fail if there is only a possibility of or speculation as to a causative connection. McIntyre v. St. Tammany Parish Sheriff, 02-0700 (La.App. 1 Cir. 3/28/03), 844 So.2d 304, 310. Cause-in-fact is generally a “but for” inquiry. If the plaintiff probably would not have been injured but for the defendant’s substandard conduct, such conduct is a | incause-in-fact. Rhodes v. State through Dept. of Transp. and Development, 94-1758 (La.App. 1 Cir. 12/20/96), 684 So.2d 1134, 1143, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487. Where there are concurrent causes of an injury, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the harm. Perkins v. Entergy Corp., 00-1372 (La.3/23/01), 782 So.2d 606, 611-612. This is a factual question, and an appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Id., 782 So.2d at 612.
In this case, it cannot be said that “but for” the negligent disposal of the criminal evidence the plaintiff would not have suffered emotional distress. The plaintiff relived the terror of her rape when she realized the possibility that the serial killer was the man who had raped her fourteen years earlier. The plaintiffs distress increased when she met with the Sheriffs Office and was told that the physical description of her attacker and the serial killer did not match. At the same time, the plaintiff learned that the Sheriffs Office no longer possessed the evidence collected during the initial investigation of the rape. It is evident, however, that regardless of whether the criminal evidence was preserved the serial killer was not linked to the plaintiffs attack. As a result, the plaintiff faced the unfortunate realization that the rapist would not be apprehended and that her case would remain an open investigation rather than be solved, i.e., the plaintiff had no closure. This is true whether the evidence from the original criminal investigation exists or not. Clearly, this reality is the cause-in-fact of the plaintiffs emotional distress, since it was the plaintiffs belief that the serial killer was her rapist that initially began the regrettable chain of events that led to the discovery of the discarded evidence. Thus, the trial court manifestly erred in its conclusion that the disposal of the evidence was a substantial factor in bringing about the plaintiffs h[emotional distress. That factual conclusion is simply not reasonably supported by the record.
*197 CONCLUSION
We find as a matter of law that the Sheriffs Office has no liability to this plaintiff under this factual scenario. The trial court erred in concluding that the Sheriffs Office had a duty to preserve the evidence in the criminal investigation for the personal benefit of this victim of a crime and in finding that the plaintiff had established cause-in-fact by a preponderance of the evidence. Accordingly, while we have great sympathy for the plaintiff, we feel constrained to reverse the trial court’s judgment. The plaintiff is assessed with all costs of this appeal.
REVERSED.
GUIDRY, J., concurs in the result.
PETTIGREW, J., concurs and assign reason.

. In 1989, Harold Tridico was the sheriff of Ascension Parish. His successor, and the sheriff of Ascension Parish at the time of the plaintiff's suit, is Jeffrey F. Wiley. Both sheriffs were named as defendants, individually, and in their official capacities.

. Louisiana Revised Statute 15:41 provides for the disposal of property seized in connection with a criminal proceeding that is not to be used as evidence or is no longer needed as evidence. Louisiana Code of Criminal Procedure art. 572 A(l) provides that no person shall be prosecuted for a felony necessarily punishable by imprisonment at hard labor after six years from the date that the offense was committed. The crime of simple rape is punishable by imprisonment with or without hard labor. LSA-R.S. 14:43 B. Conversely, there is no time limitation for the prosecution of a crime that is punishable by death or life imprisonment, such as the crime of aggravated rape. LSA-C.Cr.P. art. 571; LSA-R.S. 14:42 D(l). It is undisputed that the requisite period of time had passed for disposal of the evidence connected with the investigation of a simple rape.

. The District Attorney's power and duties are subject to the supervision of the Attorney General. See LSA-C.Cr.P. arts. 61 and 62. It is well-settled that the District Attorney is absolutely immune from civil liability for actions within the scope of duties such as initiating and pursuing a criminal prosecution. Sinclair v. State ex rel. Dept. of Public Safety and Corrections, 99-2290 (La.App. 1 Cir. 11/3/00), 769 So.2d 1270, 1271, writ denied, 00-3331 (La.1/25/02), 806 So.2d 665, cert. denied, 536 U.S. 910, 122 S.Ct. 2369, 153 L.Ed.2d 189 (2002).