GASKINS, J.
_J/The plaintiff, Ralph T. Barnes, appeals from a trial court judgment clarifying a previous jury verdict. On remand from this court, the trial court dismissed the plaintiffs claims against the City of Monroe (City) and the Riverwood Apartments Partnership (Riverwood). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
This is the third time that this matter has been before this court. Simply stated, on May 10,1997, the plaintiff, a resident of Riverwood, went out for a walk and fell into a hole located adjacent to the curb of Deborah Drive, a street that abuts the Riverwood property. It appears that the hole was covered with grass when the plaintiff stepped on it. The plaintiff sustained a broken leg.
Deborah Drive is located adjacent to Riverwood. A driveway enters Riverwood from Deborah Drive; the apartments do not face the street. From Deborah Drive, in the area of the hole at issue here, a sign is visible identifying the apartment complex. From this area, only the back of the apartments is visible. Between the back of the apartments and the street is a grassy area. The record shows that the City owns the street and 12 feet into the grassy area behind the Riverwood complex. Riv-erwood owns the remaining grassy area up to and including the buildings. On the paved curb of the street is a drain. The hole was located directly next to the paved street and went under the pavement where dirt had washed away. The hole was covered with grass. No drainage pipes from Riverwood emptied into the drain. There is no sidewalk next to the street.
In Barnes v. Riverwood Apartments Partnership, 38,331 (La.App. 2d Cir.4/7/04) 870 So.2d 490, writ denied, 2004-1145 (La.6/25/04) 876 So.2d 845 (Barnes J), this court stated the facts as follows:
At the time of his injury that forms the basis of this lawsuit, Mr. Barnes was a tenant in the Riverwood Apartments in *364 Monroe, Louisiana. While walking across the common area of the apartment complex to a designated drop-off site for canned food donations, Mr. Barnes stepped in a hole and sustained injuries to his legs. The hole was created by a washing away of soil near a drainpipe and, apparently, was not readily visible because of the turf that continued to grow over the top of the hole. As a result of the damages sustained, Mr. Barnes sued Riverwood, its insurer and the City of Monroe. [Footnotes omitted.][1]
In Barnes I, the plaintiff filed a motion for summary judgment and a motion to determine the applicable law regarding whether he could argue both the theories of strict liability and negligence. The plaintiff claimed that Riverwood was liable under the theory of strict liability set forth in La. C.C. art. 2695, which specified that a landlord was strictly liable to a tenant for injuries caused by defects in the premises. The trial court found that the theory of strict liability did not apply to this case and concluded that Riverwood had no notice of the hole and was not liable under the principles of negligence under La. C.C. arts. 2317 and 2317.1. Judgment was entered in favor of Riverwood. This court reversed and remanded for trial, finding 13that the plaintiff could proceed under both the theories of strict liability and negligence.
On remand, a jury trial was held. Before the case was submitted to the jury, the trial court granted a motion of involuntary dismissal in favor of the City, dismissing the plaintiffs claims against it. The jury rendered judgment in favor of River-wood. The plaintiff appealed.
In Barnes v. Riverwood Apartments Partnership, 42,912 (La.App. 2d Cir.2/6/08), 975 So.2d 720 (Barnes II), this court found that an indeterminate judgment had been entered. We observed that:
After hearing the evidence, the jury answered a document entitled “Interrogatories to the Jury” in which they made the following findings:
• The City of Monroe owned the property on which Mr. Barnes’ injury occurred.
• The area on which the injury occurred was not part of the leased premises.
• Riverwood did have the care, custody and control of the property where the cave-in occurred.
• Mr. Barnes did not prove by a preponderance of the evidence that Riverwood should have known of the unreasonably dangerous condition.
• The defective and unreasonably dangerous condition did cause injury to Mr. Barnes.
• Riverwood did not prove by a preponderance of the evidence that Mr. Barnes was negligent.
In a separate interrogatory, the jury then allocated 33 1/3 percent fault each to Mr. Barnes, Riverwood and the City of Monroe. Finally, the jury awarded $5,000 for past medical expenses. The interrogatories, and the answers thereto, were incorporated into the trial court’s final judgment, which, following the in *365 terrogatories, continued to read, “[fjor the reasons expressed in the foregoing Interrogatories, the court Renters Judgment in favor of Riverwood and Shelter, dismissing plaintiff’s claims at plaintiffs cost.” (Emphasis ours.)
In Barnes II, we vacated the jury verdict and remanded the matter to the trial court for clarification of the judgment.
On remand, the trial court held a hearing on March 26, 2008. At that hearing, it was argued that the jury interrogatories should have directed the jury to stop after interrogatories four and five if they found that Riverwood and the City neither knew nor should have known, in the exercise of reasonable care, of the unreasonably dangerous condition which caused the plaintiffs injuries and that his injuries could have been prevented by the exercise of reasonable care. The jury found that Riv-erwood and the City neither knew nor should have known of the condition. On remand, the plaintiff filed a motion for judgment notwithstanding the verdict (JNOV) under La. C.C.P. art. 1811. The trial court never used that exact phraseology, but in effect granted a JNOV in favor of Riverwood.
In a judgment signed May 28, 2008, the trial court found that the City owned the property in question, but had no notice or knowledge of any unreasonably dangerous condition in said property. Judgment was granted in favor of the City, dismissing the plaintiffs claims against it.
The trial court then specified that the jury found that Riverwood did not own the property in question. The jury also found that the plaintiff did not prove that the property in question was part of the leased thing. Therefore, the plaintiff failed to carry his burden of proof with respect to | ¡¡claims asserted under former La. C.C. art. 2695 and the plaintiffs claims of strict liability were dismissed.
The trial court found that the plaintiff failed to prove that Riverwood knew of the unreasonably dangerous condition which caused the plaintiffs injuries. According to the trial court, the jury also found that the plaintiff failed to prove that his injuries could have been prevented by the exercise of reasonable care. Therefore, the plaintiff failed to carry his burden of proof with respect to his negligence claims on the part of Riverwood and those claims were dismissed.
The plaintiff filed the present appeal, asserting numerous assignments of error.[2]
OWNERSHIP
Originally, when this suit was filed, Riv-erwood assumed that it owned the area where the accident occurred. During the course of the trial of this matter, River-wood changed its position to assert that the area where the accident occurred was located on the City’s property next to and including Deborah Drive and that River-wood could not be held liable for a hole on adjoining property. The evidence at trial established that the hole was located on the curb directly next to Deborah Drive on property owned by the City.
Tod Cagle, an attorney who was accepted as an expert in Louisiana property law, testified that a 60-foot piece of property was legally dedicated by land developers to the City for Deborah Drive. This dedication gave | ^ownership of the 60-foot wide strip of property to the City. Deborah Drive was constructed only to a width of 36 feet; 12 feet from the edge of the pavement toward Riverwood was City property.
*366 The evidence establishes that the area where the accident occurred was owned by the City. Strict liability no longer applies to public entities and the City could only be held liable under the negligence theory if it knew or should have known of the defect. La. R.S. 9:2800. The hole was covered by grass and there is no evidence to show that the City knew or should have known of the defect. Accordingly, there was no evidence in this record to meet the burden of proof of negligence on the part of the City.
The trial court granted a motion for directed verdict dismissing the plaintiffs claims against the City and the plaintiff has not appealed that judgment. However, on appeal, the plaintiff raises numerous assignments of error regarding the issue of ownership. The plaintiff claims that Riverwood judicially confessed that it owned the area where the accident occurred and that it was part of the common ground of the apartment complex. Regarding judicial confessions, La. C.C. art. 1853 provides:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
In this matter, any early admissions by Riverwood concerning ownership of the area where the hole was located were factually erroneous. Because a judicial confession may be revoked on grounds of error of fact, the trial court did not err in allowing Riverwood to show that it did not own |7the area where the accident occurred. Although the plaintiff raises numerous assignments of error regarding the issue of ownership, we find these are not dispositive in this matter.
STRICT LIABILITY
The plaintiff sought to establish liability against Riverwood through the theory of strict liability of lessors set forth in former La. C.C. art. 2695. The plaintiff on appeal argues that the trial court erred in finding that the grassy area where this accident occurred was not part of the leased premises. The plaintiff also claimed that the apartment drainage system, which emptied into the City’s catch basin on Deborah Drive, was leaking and the leak caused erosion under the grass, forming a hole. According to the plaintiff, the drainage system was part of the leased premises.
At the time of this accident, La. C.C. art. 2695, dealing with the strict liability of a lessor, stated:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.[3]
In Barnes I, we discussed this article and stated that a defect, for purposes of the provision, had been defined as “a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.” We stated that to recover under this article, it is | snot necessary to prove the cause of the defect; the lessee need only prove the existence of the defect. We further *367 set forth that, in order for a lessee to recover damages from the lessor under the article due to an alleged vice or defect in the leased premises, the lessee must prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages. We found that strict liability under La. C.C. art. 2695 had consistently been applied by Louisiana courts to all portions of the leased property, including areas not under the control of the lessee such as common accessories which are used by multiple tenants like stairways, walkways, steps, and passageways. See cases cited in Barnes I.
To recover under the theory of strict liability, the plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant; (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff; and (3) the defective condition of the thing caused the plaintiffs injuries. Lee v. Magnolia Garden Apartments, 96-1328 (La.App. 1st Cir.5/9/97), 694 So.2d 1142, writ denied, 97-1544 (La.9/26/97), 701 So.2d 990.
When this accident occurred, La. C.C. art. 2681 provided that he who possesses a thing belonging to another may let it to a third person, but he cannot let it for any other use than that to which it is usually applied.[4] The evidence in this matter establishes that the street, and the 12-foot strip between it and Riverwood were owned by the City. The question arises as |9to whether Riverwood included this property in its lease. Ownership is not necessarily dispositive in determining what constitutes the leased premises. In Barnes I, we determined that the lease included the common areas. No description of the common areas was included in the lease.
The apartment manager at the time of this incident, Mary Katherine Burkett, testified that the grassy areas in the front, sides, and back of the complex were designated for dog walking. No further information was elicited, such as whether this designation was relayed to the tenants or whether dog owners just found the nearest grassy area out of the flow of foot traffic for use by their pets.
The evidence shows that the plaintiff was taking a new route leaving the apartment complex for his daily walk and had not gone into the back grassy area previously. He was walking along the edge of the paved roadway when he stepped into the hole along the curb of the street. The hole was a concave area that was washed out beside and under the street.
The City owned this roadside area where the hole was located. To find that Riverwood leased the City property where the hole was located to its tenants, the plaintiff would have to show that River-wood possessed the roadside, incorporated it into its common area, and that tenants would reasonably believe that the roadside was part of the common area.[5] Riverwood put on evidence to show that no pipes from Riverwood flow into the drain or caused the erosion which resulted in the formation of this hole. We find, as did the trial court, that the area where the hole was located was |innot part of the leased premises. Accordingly, we find that the plaintiff has failed to show that Riverwood is liable for the plaintiffs injuries under the theory of strict liability.
*368 NEGLIGENCE
The plaintiff also sought to recover under the theory of negligence. The law applicable to a claim of negligence is set forth in La. C.C. arts. 2317 and 2317.1. La. C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
The addition of La. C.C. art. 2317.1 to the Civil Code in 1996 did away with the concept of strict liability for a defective thing by imposing on plaintiffs the added burden of proving that the defendant either knew, or with the exercise of reasonable care, should have known of the ruin, vice, or defect. Player v. Baker, 42,451 (La.App. 2d Cir.9/19/07), 965 So.2d 984.
In addition to proving this knowledge element, the plaintiff must also prove that the defendant had custody of the thing which caused injury, that the thing contained a defect (meaning a condition that created an |T1unreasonable risk of harm), and that the defective condition caused the plaintiffs injury. Player v. Baker, supra; Johnson v. City of Monroe, 38,388 (La.App. 2d Cir.4/7/04), 870 So.2d 1105, writ denied, 2004-1130 (La.6/25/04), 876 So.2d 843.
The record shows that the offending hole was covered by grass until the plaintiff stepped on it and fell in. Even though Riverwood mowed the area and picked up trash next to the road, there is no showing that Riverwood had notice of the existence of the hole.[6] Therefore, as found by the trial court, the plaintiff failed to establish any negligence on the part of Riverwood.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment finding that plaintiff failed to establish that the area where this accident occurred was part of the leased premises of Riverwood and that the plaintiff failed to establish that the defendant, Riverwood Apartments Partnership, is liable to the plaintiff under the theories of strict liability or negligence for injuries sustained when the plaintiff fell into a hole. Costs in this court are assessed to the plaintiff.
AFFIRMED.
CARAWAY, J., concurs with written reasons.
LOLLEY, J., dissents with written reasons.

. In Barnes I, the facts were set forth based upon the record submitted to us on summary judgment. Those facts are somewhat in error. After the trial on the merits, a much clearer picture of the situation emerged. At the trial, the plaintiff testified that he dropped off his donation of canned goods near the mailbox area, then went to walk his daily two miles. He walked around the pool, cut through the parking lot, went across the grounds and into the grassy area. He then walked beside Deborah Drive and fell into the hole. This distinction is important because it shows that Riverwood did not incorporate this roadside into the area it used for tenant activities.

. The plaintiff has not appealed from the grant of the motion for involuntary dismissal filed by the City. Therefore, the issue of the City’s liability is not before us.

. The substance of this article is now contained, in part in La. C.C. arts. 2696 and 2697 which were added by Acts 2004, No. 821 § 1, effective January 1, 2005.

. The substance of this article is now contained in part in La. C.C. art. 2674, which specifies that a lease of a thing that does not belong to the lessor may nevertheless be binding on the parties.

. Because the hole is located directly on the roadside, it was clearly not part of tire leased premises.

. Negligence is the proper theory of recovery' against a defendant having garde over property.