BROWN, Chief Judge.
| fin this action for damages arising out of an intersectional collision between two emergency responders, defendants, Johnny Marsh and the City of Tallulah, have appealed from the trial court’s judgment in favor of plaintiffs, Derrick Young, and his *1249 wife, Lawanda Young, and their four children. Defendants are contesting the trial court’s determination of liability and apportionment of fault, as well as the damages awarded to plaintiffs. For the reasons set forth below, we affirm.

Facts and Procedural Background

At approximately 6:45 a.m. on June 17, 2007, Madison Parish Sheriffs Deputy Derrick Young and Tallulah Fireman Johnny Marsh collided at the intersection of U.S. Hwys. 80 and 65 in Tallulah, Louisiana. Deputy Young was traveling south on Hwy. 65 in a sheriffs patrol car, and Marsh was traveling east on Hwy. 80 in a city fire truck. Both were responding to an emergency involving an overturned vehicle on Interstate 20 near the Mound exit. Dy. Young had activated his flashing lights and siren; his air conditioner was running, the windows in his patrol car were up, and his dispatch radio was on. The traffic control signal was green as he approached the intersection.
Fireman Marsh had activated the lights and siren on the fire truck he was driving. The truck was loaded with water and weighed approximately 25,000 lbs. Marsh’s speed was estimated to be 35-45 mph, and the posted speed limit was 25 mph. Marsh admitted that his traffic signal was red as he approached the intersection, and that his view to the left (north) was obstructed by a service station at the northwest corner of the intersection. 12As Marsh proceeded through the intersection, his fire truck’s front right bumper struck the rear right quarter corner panel of Dy. Young’s patrol car. Billy Zeigler, the state trooper who investigated the accident, noted that there were no skid marks prior to impact, which • indicated that the fire truck had not applied its brakes until after the impact. Trooper Zeigler further observed that there were 111 feet of skid marks made by the fire truck from the point of impact to the fire truck’s resting spot.
Deputy Young was seriously injured as a result of the accident. Plaintiffs filed suit against defendants, Johnny Marsh, the City of Tallulah, the Madison Parish Police Jury (which was dismissed on a motion for summary judgment filed prior to trial), and XYZ Insurance Co. (although it was discovered prior to trial that the City of Tallulah was uninsured at the time of the accident). A bench trial was held on March 11, 2013. The trial court found that the June 17, 2007, accident was caused solely by the negligence of defendant, Johnny Marsh, a city employee, while in the course and scope of his employment with the Tallulah Fire Dept. The court awarded damages as follows:
Derrick Young:
General Damages-Cervical Injuries $300,000.00
General Damages-Lumbar Injuries $100,000.00
Past Medical Expenses , $169,353.20
Future Medical Expenses $61,347.20
Past Lost Wages $85,000.00
Future Lost Wages $345,000.00
Loss of Consortium
Lawanda Young: $75,000.00
Demeante Young: $25,000.00
Derrick Young, Jr: $25,000.00
Dorian Young: $25,000.00
Derillon Young: $25,000.00
*1250 | .¡Defendants have appealed, urging error in the finding and apportionment of fault, and the amounts awarded as damages.

Discussion

Liability and Apportionment of Fault

Defendants first assert that the trial court erred in assessing 100% of the fault to Marsh and the City of Tallulah. According to defendants, Marsh did not breach his duty of care as an emergency responder and should not have been assigned any fault. In the alternative, defendants contend that Dy. Young should have been assessed with some percentage of comparative fault.
Plaintiffs, on the other hand, urge that the trial court correctly found that the sole cause of the accident was the negligence of Marsh in running a red light while traveling at an excessive rate of speed in the city fire truck without first ascertaining that traffic favored with the green light (such as Dy. Young’s patrol car) was yielding to his fire truck.
Both parties involved. in this accident were drivers of emergency vehicles and therefore subject to the provisions of La. R.S. 32:24, which provides:
A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver or rider of an authorized emergency vehicle may do any of the following:
(1) Park or stand, irrespective of the provisions of this Chapter.
L(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
(3) Exceed the maximum speed limits so long as he does not endanger life or property.
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider’s whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.
As set forth by the Louisiana Supreme Court in Lenard v. Dilley, 01-1522 (La.01/15/02), 805 So.2d 175, 177, La. R.S. 32:24 contains two alternate standards of care applicable to the driver, depending upon the circumstances. If subsections A, B and C of La. R.S. 32:24 are met, an emergency vehicle driver will be held liable only for actions which constitute reckless disregard for the safety of others. See Rabalais v. Nash, 06-0999 (La.03/09/07), 952 So.2d 653; Neloms v. Empire & Marine Insurance Co., 37,786 (La.App.2d Cir.10/16/03), 859 So.2d 225. However, if the emergency vehicle driver’s conduct does not fit subsections A, B and C, such driver’s actions will be gauged by the ordinary negligence standard. See Spears v. City of Scott, 05-0230 (La.App. 3d Cir.11/02/05), 915 So.2d 983, writ de *1251 nied, 05-2478 (La.03/31/06), 925 So.2d 1259. Subsection D of La. R.S. 32:24 states in part that a breach of the provisions IsSet forth in the statute do not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons. The court in Lenard, supra, further held that whether the conduct of the emergency vehicle driver is to be gauged by a “reckless disregard” or “ordinary negligence” standard of care is a question to be determined by the trier of fact. Id., at 181.
Determinations of liability and allocations of comparative fault are factual findings made by the trial court. Dupree v. City of New Orleans, 99-3651 (La.08/31/00), 765 So.2d 1002; Theriot v. Lasseigne, 93-2661 (La.07/05/94), 640 So.2d 1305. It is well settled that a reviewing court may not disturb the factual findings of the trier of fact in the absence of manifest error. Lafayette City-Parish Consolidated Government v. Person, 12-0307 (La. 10/16/12), 100 So.3d 293; Rosell v. ESCO, 549 So.2d 840 (La.1989). In Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978), the supreme court set forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable basis for the finding of the trial court; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong or manifestly erroneous. If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Lafayette City-Parish Consolidated Government, supra; Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990). When there are two views of the evidence, the fact finder’s choice between them cannot be | (¡manifestly erroneous. Stobart v. State, Through Dept. of Transportation and Development, 617 So.2d 880 (La.1993); Sistler, supra.
The trial court specifically found that:
Johnny Marsh and Derrick Young were each responding to an emergency in their respective vehicles. They each were entitled to the privileges afforded to them under La. R.S. 32:24 since they were each driving an authorized emergency vehicle. However, Marsh did not have the privilege afforded him under the statute at the time of the accident since he was approaching a red light and he did not slow down or stop so as not to endanger life or property. Likewise, he exceeded the maximum speed limit in a manner which endangered life and property. (La. R.S. 32:24(B)(2) and (B)(3).) Marsh breached the standard of ordinary negligence and is, therefore 100% liable for the cause of the accident with Young.
Regarding Dy. Young’s actions, the trial court found that:
Young with his emergency lights and siren operating, entered an intersection on a green light at a moderate speed. He maintained a general observation of the intersection but he was unable to see Marsh’s emergency lights because of the service station at the corner of the intersection until it was too late to avoid the collision. Young was unable to hear Marsh’s siren because he had the windows up in his vehicle, the air conditioner on, and his emergency siren engaged. Young was not negligent, did not drive without due regard for the safety of others, and did not contribute in any way to this accident. Marsh was the sole cause of the accident at issue and breached his duty to drive with due regard for the safety of others,
Having reviewed the record, we find no manifest error in the trial court’s liability and fault determinations. Marsh *1252 was driving a fire truck which was fully loaded with water and weighed approximately 25,000 lbs. He did not notice he had a red light until he was approximately 50-100 feet from the intersection and could not see the cross traffic adequately due to the gas station on the northwest corner of the intersection. Furthermore, he was exceeding the speed limit by at least ten miles per hour as he approached the red light, which, given the weight of the fire truck, did not 17give him adequate time to slow down or stop. The court correctly found that Marsh’s actions breached the standard of ordinary negligence and constituted the sole cause of the accident. The actions of Deputy Young, which fit into subsections A, B and C of La. R.S. 32:24, were subject to the “reckless disregard” standard, and as such, the trial court’s finding that Dy. Young did not breach this standard of care and therefore was not at fault is neither clearly wrong nor manifestly erroneous.

Damages

(1) General Damages: Derrick Young

Defendants next contend that the trial court’s award of general damages in the amount of $300,000 for Dy. Young’s cervical injuries and $100,000 for his lumbar injuries are excessive and should be reduced.
General damages are intended to compensate an injured plaintiff for mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00), 773 So.2d 670; Brown v. City of Monroe, 48,764 (La.App.2d Cir.02/26/14), 135 So.3d 792. The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. LeBlanc v. Stevenson, 00-0157 (La.10/17/00), 770 So.2d 766. More specifically, the nature, relative severity, and extent of bodily injuries are qualitative factors that must first be considered by the trier of fact in awarding general damages. The duration of a plaintiffs injury symptoms and the duration of treatment are quantitative factors that 18must also be taken into account. Thongsavanh v. Schexnayder, 09-1462 (La.App. 1st Cir.05/07/10), 40 So.3d 989, writ denied, 10-1295 (La.09/24/10), 45 So.3d 1074.
The assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a factual determination entitled to great deference on review. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. As such, the role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Before a trial court’s award of general damages can be questioned as excessive, the reviewing court looks first, not to prior awards, but to the individual circumstances of the instant case. Bouquet v. Wal-Mart Stores, Inc., 08-0309 (La.04/04/08), 979 So.2d 456. If there is no abuse of the trial court’s vast discretion, the damage award will not be disturbed by the reviewing court. Youn, supra; Hunt v. Long, 33,395 (La.App.2d Cir.06/21/00), 763 So.2d 811. As noted by the supreme court in Youn, supra, this vast discretion is such that the appellate court should rarely disturb an award of general damages.
Deputy Young was taken from the accident site to the Madison Parish Hospital emergency room. He was diagnosed with cervical and lumbar injuries. Dy. Young began treatment with his family physician, *1253 Dr. Lawrence Chenier, who referred plaintiff for an MRI of his cervical spine on July 2, 2007. The MRI revealed a large herniated disc at C5-6 which 19was impinging on the spinal cord and the neurofora-men on the left side. Dr. Chenier treated Dy. Young for several months with no success, so he referred him to Dr. Anil Nanda at LSU Health Sciences Center in Shreveport for a neurosurgical evaluation. Dr. Nanda examined Dy. Young on October 9, 2007, and noted the herniated disc at C5-6. Dr. Nanda referred plaintiff for conservative treatment, to include physical therapy and epidural steroid injections.
A six-week physical therapy program Dy. Young participated in did not produce any substantial relief to his neck and back pain. Plaintiff was evaluated by Dr. Vince Forte with the Louisiana Pain Care Clinic in Monroe on January 15, 2008. Dr. Forte treated plaintiff with cervical epidural injections on February 28, March 11,- and March 27, 2008. Because these did not provide relief for plaintiff, Dr. Forte performed left cervical medial branch nerve blocks on Dy. Young on May 7 and August 5, 2008. Neck and back pain continued to plague plaintiff, so Dr. Forte attempted left radio frequency cervical medial branch neurotomies on September 28 and October 7, 2008. Dr. Forte’s notes from November 12, 2008, report that none of these surgical procedures alleviated Dy. Young’s pain and discomfort. No improvement was noted on visits to Dr. Forte on December 15, 2008, and February 18, 2009.
An MRI performed on April 21, 2009, showed either a prominent asymmetrical bulging disc or some degree of disc herniation at C5-6. Plaintiff returned to Dr. Nan-da on June 3, 2009, after all conservative treatment had proven to be unsuccessful, and Dr. Nanda recommended an 110anterior cervical fusion at C5-6. The anterior cervical discectomy with fusion and plating was performed by Dr. Nanda on August 15, 2009. A follow-up MRI on September 1, 2009, showed a herniated disc at C6-7, which Dr. Nanda opined was likely caused from the stress caused by the first surgery. Dy. Young underwent a second surgery on October 8, 2009. Dr. Nanda performed an anterior cervical fusion, discectomy, placement of a peek cage with bone morphogenic protein, placement of plates with screws through C5, 6 and 7, • and removal of the old plate at C5-6.
Plaintiffs cervical pain has improved somewhat after the second surgery, although he continues to suffer from occasional pain radiating from his neck. However, Dy. Young’s lower back pain has persisted since the accident on June 17, 2007. An MRI performed by Dr. Nanda on plaintiff’s lower back on February 3, 2010, showed a disc herniation at L5-S1 with impingement.
Dr. Nanda has recommended that plaintiff have two further surgical procedures: a left side discectomy at L5-S1 and a decompressive cervical laminectomy. As of trial, Dy. Young had not elected to have these surgeries. However, as noted infra, according to Dr. Nanda, it is more likely than not that plaintiff will need these procedures in the near future. Dy. Young’s pain is still ongoing; he is seven years post-accident and has yet to see significant recovery. He takes pain and anti-inflammatory medication on a daily basis to manage his pain and discomfort. Plaintiff is limited in the activities he can enjoy with his wife and children, and is bothered by neck and pain most of the time when he is not working. We do |nnot find the trial court’s general damage awards of $300,000 and $100,000 to be an abuse of its vast discretion.

(2) Special Damages: Derrick Young

Special damages are those which have a “ready market value,” such that the *1254 damages theoretically may be determined with relative certainty, including medical expenses and lost wages. Guillory v. Lee, 09-0075 (La.06/26/09), 16 So.3d 1104; McGee v. AC & S, Inc., 05-1036 (La.07/10/06), 933 So.2d 770; Barnes v. Riverwood Apartments Partnership, 43,-798 (La.App.2d Cir.02/04/09), 16 So.3d 361. An appellate court, in reviewing a trial court or jury’s factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the fact-finder’s conclusions, and the findings must be clearly wrong. Guillory, supra.
(A) Future Medical Expenses
Defendants argue that the trial court erred in awarding Dy. Young future medical expenses. According to defendants, while Dr. Nanda, Dy. Young’s neurosurgeon, did testify that Dy. Young was a candidate for further surgery, in response to a question from defense counsel, Dr. Nanda stated that it would depend on plaintiffs pain tolerance and his willingness to go through with another surgery, having been through two procedures already. Plaintiff therefore failed to show that these surgical procedures were “reasonably necessary.”
The recovery of future medical expenses is dependent upon the tort victim establishing the probability of the future medical expenses with | ^supporting medical testimony and estimations of their probable cost. Menard v. Lafayette Insurance Co., 09-1869 (La.03/16/10), 31 So.3d 996; Caskey v. Merrick Construction Co., Inc., 46,886 (La.App.2d Cir.03/14/12), 86 So.3d 186, writ denied, 12-0847 (La.06/01/12), 90 So.3d 442. Future medical expenses must be established with some degree of certainty. Id.
In the instant case, Dy. Young’s treating neurosurgeon, Dr. Anil Nanda, testified that it was his recommendation that Dy. Young undergo two more surgeries for injuries he sustained in the accident: specifically, a left side discectomy at L5-S1 and a decompressive cervical laminectomy. Dr. Nanda testified that the estimated cost of the two surgeries was $11,347.30, and the associated hospital charges were estimated to be $50,000, based upon the amounts charged by the hospital for Dy. Young’s previous surgeries. This figure, $61,347.20, was unrebutted, and is reasonable. See Daigle v. City of Shreveport, 46,429 (La.App.2d Cir.10/05/11), 78 So.3d 753, unit denied, 11-2472 (La.02/03/12), 79 So.3d 1027. It is understandable that plaintiff, having already had two surgeries, might feel some trepidation about undergoing two further procedures. Nonetheless, it was Dy. Young’s testimony that because he continues to suffer from neck and back pain, he plans to return to Dr. Nanda for the recommended surgeries. The trial court did not err in its award of future medical expenses to Dy. Young.
(B) Past Lost Wages and Future Loss of Earning Capacity
[ 1RA plaintiff seeking damages for past lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. Boyette v. United States Automobile Association, 00-1918 (La.04/03/01), 783 So.2d 1276. The amount of lost earnings need not be proved with mathematical certainty, but by proof as reasonably establishes the claim, and such proof may consist only of the plaintiff’s own testimony. Driscoll v. S tucker, 04-0589 (La.01/19/05), 893 So.2d 32. The trier of fact has broad discretion in assessing awards for lost wages, but there must be a factual basis in the record for the award. Id.; Downs v. E.O.M. Entertainment, Inc., 43,654 (La.App.2d Cir.10/22/08), 997 So.2d 125.
*1255 The loss of future wages encompasses the loss of a plaintiffs earning potential — the loss or reduction of a person’s capability to do that for which he is equipped by nature, training and experience, and for which he may receive recompense. Travis v. Spitale’s Bar, Inc., 12-1366 (La.App. 1st Cir.08/14/13), 122 So.Sd 1118, writs denied, 13-2409, 13-2447 (La.01/10/14), 130 So.3d 327, 329. In determining a future loss of earning capacity award, factors to be considered are the plaintiffs physical condition before the injury, the plaintiffs past work history and work consistency, the amount the plaintiff would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. Starr v. State ex rel. Dept. of Transporation and Development, 46,226 (La.App.2d Cir.06/17/11), 70 So.3d 128, writs denied, 11-1835, 11-1952, 11-1625 (La.10/21/11), 73 So.3d 386, 387, 388, writ denied, 12-2146 (10/12/12), 98 So.3d 877; Brandao v. |14 Wal-Mart Stores, Inc., 35,-368 (La.App.2d Cir.12/19/01), 803 So.2d 1039, writ denied, 02-0493 (La.04/26/02), 814 So.2d 558; Rathey v. Priority EMS, Inc., 04-0199 (La.App. 4th Cir.01/12/05), 894 So.2d 438, writs denied, 05-0789, 05-0802 (La.05/06/05), 901 So.2d 1107, 1108.
Dy. Young testified that prior to his accident, he worked at Harrah’s Casino (off track betting) and Club Paradise as a security guard. Plaintiff stated that he earned approximately $1,000.00-$1,500.00 per month at these extra jobs. He also testified that he could not work as much overtime after the accident, and was unable to drive escort for high school teams traveling out of town or work security at basketball and football games. The trial court found that plaintiff had established past lost wages of $1,250 per month for 68 months, for a total of $85,000.00. This award is supported not only by plaintiffs testimony, but by the testimony of Mrs. Young and financial records as well. As for future loss of earnings, the trial court calculated that Dy. Young has 23 years remaining in his work life expectancy and determined that because of plaintiffs apparently permanent limitations, he would not be able to work the extra jobs in the future. We cannot say that this determination is clearly wrong, and will not disturb the trial court’s future loss of earnings award of $345,000.

(3) Loss of Consortium: Mrs. Young and four minor children

In this assignment of error, defendants assert that the trial court erred in awarding Dy. Young’s wife and four children damages for loss of consortium. In the alternative, defendants contend that the amounts awarded were excessive. In seeking a reduction in these awards, defendants |1sargue that, after the accident, Dy. Young’s work activities did not decrease. For example, plaintiff continued to work his full-time job at the sheriffs department, as well as his part-time jobs and some overtime hours patrolling and escorting buses to football and basketball games for local schools.
La. C.C. art. 2315(B) authorizes the recovery of monetary damages for loss of consortium, service and society by the spouse and children of an injured person. Smith v. Escalón, 48,129 (La.App.2d Cir.06/26/13), 117 So.3d 576. In general, a claim for loss of consortium has seven elements: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Smith, supra; Caskey, supra; McNeill v. Landstar Ranger, Inc., 43,362 (La.App.2d Cir.06/11/08), 986 So.2d 905, writ denied, 08-1558 (La.10/10/08), 993 So.2d 1287; *1256 Etheredge v. St. Paul Mercury Insurance Co„ 35,832 (La.App.2d Cir.04/03/02), 814 So.2d 119. Damages for loss of consortium are general damages, the assessment of which the factfinder is given much discretion. La. C.C. art. 2324.1; McNeill, supra; Etheredge, supra.
The trial court awarded Mrs. Young $75,000 and each of the four children $25,000, finding that before the accident, Dy. Young had enjoyed a very active lifestyle with his wife and four young children, had performed most of the yard work and had been a “hands on” father. The court further noted that all of these activities were seriously curtailed after plaintiffs accident.
|1fiThe record supports the awards made by the trial court in this case. Mrs. Young testified that prior to his accident, plaintiff had been an excellent husband and father; if he was not working, he was home with his family, helping around the house or playing with the kids. After the accident, because of his injuries and level of pain and discomfort, when Dy. Young came home from work all he could do was rest on the couch or in his bed. Mrs. Young stated that her husband was like a “zombie” due to the medication he had to take because of pain. Dy. and Mrs. Young testified that because plaintiff could no longer work his extra jobs or overtime, finances were strained and there was a lot of stress on the couple’s relationship as a result. Both spouses also testified that the accident had a significant effect on their intimate relationship. Mrs. Young related that her husband’s mood was depressed and he never felt like doing anything after the accident. Dy. Young still suffers from chronic pain, which to this day affects his day-to-day activities. The seven years he has missed fully participating as a partner to his wife and parenting in his children’s lives will never be regained. This assignment of error is without merit.

Failure to Mitigate Damages

An injured party has a duty to take reasonable steps to mitigate his damages. Aisole v. Dean, 574 So.2d 1248 (La.1991); Britt v. City of Shreveport, 45,513 (La.App.2d Cir.11/03/10), 55 So.3d 76; Fletcher v. Simmons, 37,758 (La.App.2d Cir.10/29/03), 859 So.2d 292. The victim is not required to make substantial expenditures or incur substantial risk to avoid the consequences of the defendant’s conduct, but must use good 117sense, good faith and fair dealing once the damage has been inflicted. Campbell v. Louisiana Intrastate Gas Corp., 528 So.2d 626 (La.App. 2d Cir.1988); Aultman v. Rinicker, 416 So.2d 641 (La.App. 2d Cir.1982).
In the instant case, defendants assert that Dy. Young failed to mitigate his damages. Specifically, defendants argue that because plaintiff continued to work his regular hours with the sheriffs department after the accident, he aggravated and/or contributed to his injuries. The record does not support this allegation. While Dy. Young testified that he worked his normal shift with the department as he was able after his accident, he stressed that most of the time he did so, he was in pain. As the sole source of financial support for his family, Dy. Young testified that felt like he had no choice but to work his regular hours with the sheriffs department. As it was, Dy. Young was unable to work his “extra” jobs, something that, in addition to his mounting medical bills and expenses, put significant financial strain on his family. See Etheredge, supra. It could even be argued that by continuing to work as a deputy, plaintiff was mitigating his damages; by doing so, he drastically reduced the amount he was entitled to claim for past lost wages.

*1257
Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED.
CARAWAY, J., concurs in part and dissents in part with written reasons.